UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

―――――――――――――――――――――

RICKY SKIPPER,

          Plaintiff,

     v.                                   17-CV-83
                                          DECISION & ORDER

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.

―――――――――――――――――――――

On January 27, 2017, the plaintiff, Ricky Skipper, brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On August 28, 2017, Skipper moved for judgment on the pleadings, Docket Item 12; on September 29, 2017, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 13; and on November 21, 2017, Skipper replied, Docket Item 15.

For the reasons stated below, this Court denies Skipper's motion and grants the Commissioner's cross-motion.

**BACKGROUND**

**I.    PROCEDURAL HISTORY**

On June 30, 2015, Skipper applied for Supplemental Security Income benefits. Docket Item 11 at 18.  He claimed that he had been disabled since September 1, 2013, due to multiple sclerosis and a previous brain surgery.  *Id.* at 220.

On November 3, 2015, Skipper received notice that his application was denied because he was not disabled under the Act.  *Id.* at 80.  He requested a hearing before an administrative law judge ("ALJ"), *id.* at 106, which was held on August 16, 2016, *id.* at 18.  The ALJ then issued a decision on August 31, 2016, confirming the finding that Skipper was not disabled.  *Id.* at 32.  Skipper appealed the ALJ's decision, but his appeal was denied, and the decision then became final.  *Id.* at 5.

**II.    THE ALJ'S DECISION**

In denying Skipper's application, the ALJ evaluated Skipper's claim under the Social Security Administration's five-step evaluation process for disability determinations.  *See* 20 C.F.R. § 404.1520.  At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i).  If so, the claimant is not disabled.  *Id.*  If not, the ALJ proceeds to step two.  § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments.  § 404.1520(a)(4)(ii).  If there are no severe impairments, the claimant is not disabled.  *Id.*  If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any of the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If a claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that a claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Here, at step one, the ALJ determined that Skipper had not engaged in any substantial gainful activity since his alleged disability onset date. Docket Item 11 at 20.

3

At step two, the ALJ determined that Skipper had the severe impairment of spinocerebellar ataxia. *Id.* Then, at step three, the ALJ found that none of Skipper's impairments, either singly or in combination, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 21. In particular, the ALJ considered listing 11.17, Neurodegenerative disorders of the central nervous system, but he found that Skipper did not meet the requirements of that listing. *Id.*

Next, at step four, the ALJ found that Skipper had the RFC to perform sedentary work with some limitations. *Id.* He determined that Skipper could not work around unprotected heights or heavy machinery; was occasionally limited in bending, stooping, squatting, kneeling, and crawling; had frequent limitations in balancing; could not climb ropes, ladders, or scaffolds; had occasional limitations in handling, pushing, and pulling with the upper extremities; had occasional limitations in maintaining attention and concentration; and could not work at a production rate pace. *Id.* Finally, at step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Skipper can perform with his RFC, such as addresser. *Id.* at 30-31.

## LEGAL STANDARDS

### I. DISTRICT COURT REVIEW

When evaluating a decision by the Commissioner, district courts have a narrow scope of review: they are to determine whether the Commissioner's conclusions are supported by substantial evidence in the record and whether the Commissioner applied the appropriate legal standards. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Indeed, a district court **must** accept the Commissioner's findings of fact if they are

supported by substantial evidence in the record.  42 U.S.C. § 405(g).  Substantial

evidence is more than a scintilla and includes "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d

108, 112 (2d Cir. 2009).  In other words, a district court does not review a disability

determination de novo.  *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

## DISCUSSION

### I.    ALLEGATIONS

Skipper challenges the ALJ's decision at steps three and four.  Docket Item 12-1

at 17, 22.  He specifically argues that the ALJ erred by concluding that Skipper's

impairments did not meet or medically equal listing 11.17 and that the ALJ's RFC

determination was not supported by substantial evidence.  *Id.* at 17, 22.

### II.    ANALYSIS

#### A.  Medical Listing 11.17

A claimant is disabled if his impairments meet or medically equal one of the

specific requirements of a medical listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.

20 C.F.R. § 404.1520(a)(4)(iii).  One of those listings is "11.17 Neurodegenerative

disorders of the central nervous system, such as Huntington's disease, Friedreich's

ataxia, and spinocerebellar degeneration."[1]  The ALJ considered whether Skipper's

---

[1] The full text of this listing is:

11.17 Neurodegenerative disorders of the central nervous system, such
as Huntington's disease, Friedreich's ataxia, and spinocerebellar degeneration,
characterized by A or B:

A. Disorganization of motor function in two extremities (see 11.00D1),
resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a

impairments met this listing and determined that they did not "satisfy the clinical criteria."

Docket Item 11 at 21.

Skipper argues that the ALJ erred by not finding that his impairments met listing 11.17(A). That subsection of the listing requires that the claimant show evidence of "[d]isorganization of motor function in two extremities . . . resulting in an extreme limitation." 20 C.F.R. Part 404, Subpart P, Appendix 1. The regulations further define "disorganization of motor function" to mean "interference, due to your neurological disorder, with movement of two extremities; i.e., the lower extremities, or upper extremities."[2] Id. They also provide that an "extreme limitation" means the inability "to

_____

seated position, balance while standing or walking, or use the upper extremities; or

   B. Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following:

   1. Understanding, remembering, or applying information (see 11.00G3b(i)); or

   2. Interacting with others (see 11.00G3b(ii)); or

   3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or

   4. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. Part 404, Subpart P, Appendix 1.

   [2] The full text of this definition is:

   1. Disorganization of motor function means interference, due to your neurological disorder, with movement of two extremities; i.e., the lower extremities, or upper extremities (including fingers, wrists, hands, arms, and shoulders). By two extremities we mean both lower extremities, or both upper extremities, or one upper extremity and one lower extremity. All listings in this body system, except for 11.02 (Epilepsy), 11.10 (Amyotrophic lateral sclerosis), and 11.20 (Coma and persistent vegetative state), include criteria for disorganization of motor function that results in an extreme limitation in your ability to:

stand up from a seated position, maintain balance in a standing position and while

walking, or use your upper extremities to independently initiate, sustain, and complete

work-related activities."[3]  *Id.*  Skipper argues that the medical evidence shows he

---

      a. Stand up from a seated position; or

      b. Balance while standing or walking; or

      c. Use the upper extremities (including fingers, wrists, hands, arms, and shoulders).

20 C.F.R. Part 404, Subpart P, Appendix 1.

    [3] The full text of this definition is:

    2. Extreme limitation means the inability to stand up from a seated position, maintain balance in a standing position and while walking, or use your upper extremities to independently initiate, sustain, and complete work-related activities. The assessment of motor function depends on the degree of interference with standing up; balancing while standing or walking; or using the upper extremities (including fingers, hands, arms, and shoulders).

      a. Inability to stand up from a seated position means that once seated you are unable to stand and maintain an upright position without the assistance of another person or the use of an assistive device, such as a walker, two crutches, or two canes.

      b. Inability to maintain balance in a standing position means that you are unable to maintain an upright position while standing or walking without the assistance of another person or an assistive device, such as a walker, two crutches, or two canes.

      c. Inability to use your upper extremities means that you have a loss of function of both upper extremities (including fingers, wrists, hands, arms, and shoulders) that very seriously limits your ability to independently initiate, sustain, and complete work-related activities involving fine and gross motor movements. Inability to perform fine and gross motor movements could include not being able to pinch, manipulate, and use your fingers; or not being able to use your hands, arms, and shoulders to perform gross motor movements, such as handling, gripping, grasping, holding, turning, and reaching; or not being able to engage in exertional movements such a lifting, carrying, pushing, and pulling.

20 C.F.R. Part 404, Subpart P, Appendix 1.

suffered interference with motor function in his two lower extremities. Docket Item 12-1 at 19. Although Skipper does not discuss exactly how this results in an "extreme limitation," the only criteria that he might meet is 11.00D2(b), which provides that a claimant has an extreme limitation when he or she is unable "to maintain balance in a standing position . . . without the assistance of another person or an assistive device, such as a walker, two crutches, or two canes." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 11.00D2(b).

The medical evidence in the record belies Skipper's objection. Although he points to many treatment notes and opinions about his gait, the record only barely notes his use of an assistive device, as an "extreme limitation" requires. On April 26, 2016, Skipper saw Wendy Callen, RPA-C, and requested a prescription for a cane. Docket Item 11 at 494. She recommended that he start using a cane. *Id.* at 495. But his need could not have been great because at his hearing a few months later, Skipper admitted that he had stopped using his cane. *Id.* at 59-60. Even more basically, listing 11.00D2(b) requires that a claimant use *two* canes, 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 11.00D2(b) ("such as a walker, *two* crutches, or *two* canes") (emphasis added), so even if Skipper sometimes used a cane toward the end of the relevant period, he did not demonstrate the extreme limitation that listings 11.00D2 and 11.17 require. The ALJ did not err in so concluding at step three.

### B. Substantial Evidence Supporting the RFC

In evaluating a claim of disability, the Commissioner "will consider all *evidence* in [the claimant's] case record." 20 C.F.R. § 404.1520(a)(3) (emphasis added). Relevant evidence includes objective medical evidence such as medical signs and laboratory

findings, medical opinions, other medical evidence, nonmedical evidence, and prior administrative findings.  20 F.C.R. § 404.1513.  The ALJ fulfills his or her "'responsibility' of 'assessing [a claimant's] residual functional capacity' by reviewing 'all the relevant evidence' which includes 'objective medical evidence.'"  *Dougherty-Noteboom v. Berryhill*, 2018 WL 3866671, at *10 (W.D.N.Y. Aug. 15, 2018) (quoting relevant regulations).   "Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 Fed.Appx. 53, 56 (2d Cir. 2013).

Skipper argues that the ALJ's RFC is "not supported by substantial evidence because the evidence of record clearly shows that Plaintiff would not be capable of standing and walking for up to two hours in an eight-hour day on a sustained basis."  Docket Item 12-1 at 23.  To support that assertion, he points to medical evidence noting an "unsteady gait, frequent falls and [that he] requires a cane to maintain his balance."  *Id.*  Skipper also cites the RFC Questionnaire in which his primary care physician, Michael Slater, M.D., opined that he "cannot work currently."  Docket Item 11 at 487.  In response, the Commissioner cites objective medical evidence that he did not complain of impairments for several years during the relevant period and that he was not limited in his ability to move, as well as the opinion of consultative physician, Samuel Balderman, M.D.  Docket Item 13-1 at 18-19.

The ALJ's role is to weigh evidence and arrive at a disability determination.  "Genuine conflicts in the medical evidence are for the Commissioner to resolve."  *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).  A district court must accept the ALJ's

findings if they are supported by substantial evidence. 42 U.S.C. § 405(g). Here, objective medical evidence, including and especially Dr. Balderman's opinion, supports the ALJ's RFC determination. *See Pellam v.* Astrue, 508 F. App'x 87, 90 (2d Cir. 2013) (medical opinions of consultative examiners can constitute substantial evidence). Indeed, Skipper does not dispute *how* the ALJ reached his RFC; he disputes only the RFC that the ALJ actually reached.

Moreover, the ALJ properly and explicitly discounted the evidence that Skipper now argues he should have credited. *See* 20 C.F.R. § 404.1527 (evaluating opinion evidence for claims filed before March 27, 2017). For example, the ALJ assigned little weight to the opinions of Dr. Slater and Tomas Holmlund, M.D., because they were not consistent with other medical evidence in the record. *See* Docket Item 11 at 29-30; 20 C.F.R. § 404.1527(c)(3) ("Supportability"). The conclusion of certain medical providers that Skipper was unable to work does not require a different result both because that bald conclusion was inconsistent with the medical evidence and because it reached an issue reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(d). Even if this Court, like Skipper, disagreed with the ALJ's conclusion, that would not justify remand because the ALJ's conclusion was based on evidence "a reasonable mind might accept as adequate." *Moran*, 569 F.3d at 112. Therefore, this Court cannot, and will not, second guess the ALJ's RFC.[4]

─────────────

[4] Skipper notes that he was later found disabled with a disability onset date of the day after the ALJ's unfavorable decision in this case. Docket Item 12-1 at 22. This may indicate that his condition was deteriorating, but it does not compel a different conclusion regarding the period at issue here. *See Caron v. Colvin*, 600 Fed. App'x 43, 44 (2d Cir. 2015) (summary order) (a subsequent disability finding "is not itself evidence of disability but, rather, a conclusion based on evidence. . . . two ALJs may permissibly

## CONCLUSION

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error. Therefore, for the reasons stated above, Skipper's motion for judgment on the pleadings is DENIED, the Commissioner's cross motion for judgment on the pleadings is GRANTED, the complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated:      May 10, 2019
            Buffalo, New York

_s/ Lawrence J. Vilardo_
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

---

reach different conclusions, even on the same record," and such divergence "is not probative of anything.").